IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID STEVENS, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 11-7216 |
| v. | : | |
| TELFORD BOROUGH, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

Jones, II, J.                                                                             May 22, 2013

Plaintiff David Stevens ("Plaintiff") brings two remaining claims against Telford Borough ("Telford") Chief of Police Randall Floyd ("Floyd") individually, Borough Manager Mark Fournier ("Fournier") individually, and Telford, (together, "Defendants") arising from Plaintiff's termination from the Telford Police Department. In his First Amended Complaint, Plaintiff brought three claims: 1) Count I, as to all defendants, alleging due process and equal protection violations of Plaintiff's Fifth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; Count II, as to all defendants, alleging a privacy violation of Plaintiff's Fourth and Fourteenth Amendment Rights; and Count III, as to Telford, a *Monell* claim based upon the actions of Floyd and Fournier. Defendants filed a Rule 12(b)(6) Motion for Partial Dismissal of the Complaint, except Plaintiff's 14th Amendment procedural due process claims. This Court granted Defendants' Motion (Dkt. No. 18), and dismissed with prejudice all claims with prejudice except for Plaintiff's *Monell* claim, which was dismissed without prejudice. This Court granted Plaintiff leave to file a Second Amended Complaint. Plaintiff's filed a Second Amended Complaint (Dkt. No. 19) alleging two counts: 1) Count I, as to all defendants, a due

1

process claim[1] brought under the Fifth and Fourteenth Amendments; and 2) Count II, as to all defendants, a *Monell* claim. Only Plaintiff's procedural due process claims and *Monell* claims remain. Before the Court is Defendant's Motion to Dismiss Portions of Plaintiff's Second Amended Complaint (Dkt. No. 20), to wit, Plaintiff's realleged *Monell* claim.[2]

**I.    Facts**

As the Court recounted in its previous memorandum opinion, the alleged facts here are plain and simple. Plaintiff was employed by Telford as a part-time police officer from June 2008 until November 7, 2010. Second Am. Compl. ¶ 8. On November 5, 2010, Floyd visited Plaintiff, who had been on leave for several weeks, at his home. Id. at ¶¶ 9-10. Plaintiff answered the door dressed in his pajamas and barefoot. *Id.* at ¶ 12. Floyd asked Plaintiff to take a blood/drug test. *Id.* Floyd also placed his hand on Plaintiff's arm and gestured towards his vehicle. *Id.* Plaintiff had previously submitted to a drug test just weeks before. Id. at ¶¶ 12-13. Plaintiff refused to go with Floyd, and Plaintiff complained that he was being treated like a criminal. *Id.* In response, Floyd instructed Plaintiff to turn in his badge and gun, and said the two of them would talk later. *Id.* at ¶ 13. After consulting Fournier, Floyd terminated Plaintiff's employment on November 7, 2010. *Id.* at ¶¶ 14-15. After Plaintiff received this news, he offered to come to the police station and take a blood test, but Floyd stood by his termination decision. *Id.* at ¶ 15.

---

[1] Plaintiff's styled Count I of his Second Amended Complaint as "42 U.S.C. § 1983 – Violation of 5th and 14th Amendments: Due Process and Equal Protection Violation." This Court, however, previously dismissed the equal protection claim with prejudice. After Defendants filed their Motion to Dismiss Portions of Plaintiff's Second Amended Complaint, which addressed the equal protection claim, the parties stipulated (Dkt. No. 23) that this Court had already dismissed the Fourteenth Amendment Equal Protection claim with prejudice, and as such, it will not be readdressed by this Court.

[2] As with the First Motion to Dismiss, Defendants do not move to dismiss Plaintiff's due process claims.

## II. Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## III. Discussion

To establish municipal liability under 42 U.S.C § 1983, a plaintiff must demonstrate that the municipality itself, throughout the implementation of a policy or a custom, caused the underlying constitutional violation. *See Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 690-91 (1978). "'Policy' includes official proclamations made by a municipal decisionmaker with final authority, and 'custom' is defined as "practices of state officials . . . so permanent and well settled as to virtually constitute law." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010) (internal quotation marks and citation omitted). A municipality is not liable under Section

1983, unless the policy or custom was the "moving force" underlying the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989).

As described by the Third Circuit, municipalities may be vicariously liable under Section 1983 for the torts of their employees in one of three ways:

> (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity;
> (2) the individual himself has final policy-making authority such that his conduct represents official policy; or
> (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006)

When this Court dismissed without prejudice the *Monell* claim in Plaintiff's First Amended Complaint, this Court identified several deficiencies in that claim.[3] Plaintiff has addressed these deficiencies, and, taking Plaintiff's allegations as true, he has plausibly pleaded a *Monell* claim.

Whereas Plaintiff previously did not identify any offending policy, Plaintiff now alleges that that the absence of a random drug testing policy and the Borough's lack of policy "to deal with officers on leave or who were improperly considered part-time" were constitutionally deficient. *See Wood v. City of Lancaster*, CIV.A. 06-3033, 2009 WL 80306 (E.D. Pa. Jan. 13, 2009) *aff'd*, 352 F. App'x 641 (3d Cir. 2009) (noting that absence of policy may contribute to *Monell* claim). Plaintiff alleges that the lack of policies in these instances created an absence of procedural safeguards and afforded those in change unfettered discretion in violation of the constitution. Plaintiff has also identified Police Chief Floyd and Borough Manager Mark Fournier as those with final policy-making power, as delegated by the Mayor pursuant to the Borough Code. *See*

---

[3] This Court stated that "[i]t is unclear from the Amended Complaint what Telford's drug testing policy is alleged to be, whether Telford's regulations allegedly provide for random drug testing, or whether Telford's policy (or lack thereof) purportedly caused the Plaintiff's injuries." (Dkt. No. 18 at 6).

53 Pa. Stat. Ann. § 46123.1. Unlike in his Amended Complaint, Plaintiff's Second Amended Complaint now identifies a constitutional violation in that Defendant's "circumvent[ion of Plaintiff's] right to a pre-termination hearing" was in violation of Plaintiff's Due Process rights under the Fourteenth Amendment. *Id.* (noting that absence of policy must be proximate cause of alleged injury). Plaintiff also proffers a "failure to train" argument that "[t]he Borough failed to train its decision makers that they needed to afford Due Process protection to nominally part-time officers." Finally, Plaintiff now presents a "liability by ratification" theory on the grounds that the decision not to hold a pre-termination hearing and the decision to terminate Plaintiff was "subsequently ratified by the Mayor and Borough Council."

As required by *Monell*, plaintiff has now pleaded the existence of: 1) a policy or lack thereof; 2) a policy maker that effectuated said policy; and 3) a constitutional violation whose "moving force" was the policy in question. *Monell.,* 436 U.S. at 694. As alleged, Plaintiff's pleadings now go beyond a "formulaic recitation" of the *Monell* elements and sufficiently plead *Monell* liability to survive at least the motion to dismiss stage. *See, e.g., Defreitas v. Montgomery Cnty. Corr. Facility*, CIV.A. 08-5330, 2010 WL 5584202 (E.D. Pa. Aug. 31, 2010) *report and recommendation adopted*, CIV.A. 08-5330, 2011 WL 96493 (E.D. Pa. Jan. 11, 2011) (allowing *Monell* claim to survive motion to dismiss).

An appropriate Order follows.